UNITED STATES of America

v.

Thomas P. TOOMEY, Defendant.

No. 75 Cr. 953–S. 75 Cr. 1114.

United States District Court,
S. D. New York.

Dec. 17, 1975.

Thomas J. Cahill, U. S. Atty., S. D. N. Y., New York City, by Steven M. Schatz, V. Thomas Fryman, Jr., Asst. U. S. Attys., for the United States.

Thomas P. Toomey, pro se.

ROBERT L. CARTER, District Judge.

## OPINION

The defendant was indicted on September 30, 1975, on five counts charging illegal possession, transfer and interstate transportation of an unregistered machine gun and a revolver (75 Cr. 973). On November 18, 1975, a new indictment (75 Cr. 1114) more accurately describing the machine gun was handed down superseding the initial indictment. The defendant, despite having had his rights to counsel explained to him and being warned of the grave risks involved in a pro se defense, persisted in his refusal to have counsel. At trial both sides waived a jury, and the case was tried to the court on November 20 and 25, 1975.

The following constitute the court's findings of fact as provided by Rule 23(c) of the F.R.Crim.P. Some time in March, 1975, William Carlo, a government informer, met the defendant in a gun shop in Connecticut. The defendant told Carlo that he was having a problem with the mechanism of a handgun he owned. Carlo, a licensed dealer in firearms, volunteered to examine the gun and repair it. During the course of their conversation, the defendant told Carlo that he owned a Japanese machine gun which he had obtained some 25 years or so ago as a World War II souvenir. Carlo gave Toomey his card, and the defendant stopped by the next day with the revolver. They again had a conversation about the Japanese machine gun. Carlo told the defendant that he had a friend who liked to collect machine guns who would be interested in buying this one. The friend, of course, was Joseph Kelly, special agent, Bureau of Alcohol, Tobacco & Firearms, United States Treasury Department. Kelly is headquartered here in New York. Carlo made a number of calls to the defendant trying to persuade him not only to sell the gun but to go with him to New York to meet Kelly to effectuate the transac-

tion. Finally, Toomey agreed to sell the gun, and he and Carlo drove to New York on April 1, 1975. They met Kelly at the Canada Lounge in Mamaroneck. Toomey sold Kelly the gun for $400 and gave $100 of the proceeds to Carlo. No arrest was made at that time. Apparently Kelly thought there would be further transactions and postponed the arrest to await further developments.

Defendant had nothing further to sell, however. Carlo and Kelly, therefore, devised a ruse to get the defendant into New York again so that Kelly could arrest him. Carlo told Toomey that the gun was not functioning properly, and that Kelly wanted Toomey to contact him in New York to fix it. The meeting was arranged for May 13, 1975. Carlo, the defendant and the latter's girlfriend met Kelly and another agent posing as Kelly's girlfriend at the Tuckahoe Motor Inn in Yonkers. After some social or at least innocuous conversation they started to leave the motel, supposedly to go to Kelly's quarters to see about the machine gun. When they stepped outside, the defendant was arrested.

After his arrest, the defendant had a meeting with Carlo at the former's home. Toomey taped their conversation and it is clear from hearing the tape that Carlo knew that the conversation was being recorded. Carlo testified at trial that he could not recall any of the details of that meeting or conversation. The government suggested that since defendant is a hypnotherapist, he might have hypnotized Carlo. After hearing the tapes, that suggestion was not pressed, and the government announced on November 25, at the continued hearing, that it would not oppose a motion to dismiss Counts Two through Five of the indictment. Defendant made the necessary motion. The motion was granted.

The taped conversation is not audible throughout, but what can be heard makes clear that the machine gun would not have been sold or brought to New York except for the pressure Kelly put on Carlo to induce Toomey to agree to sell the gun and to bring it into New York. Carlo is presently under indictment under circumstances similar to that involving Toomey. A friend or acquaintance of Carlo, whom Kelly had arrested, kept telephoning Carlo asking him to agree to sell a gun he (Carlo) owned to a friend of the informer. That friend was Kelly. Carlo, at first refused, but the informer kept upping the price until Carlo agreed to sell. He went to New York with the informer, met and sold the gun to Kelly and was placed under arrest. After his arrest, Carlo began cooperating with Kelly who advised him to find anybody interested in selling guns and Kelly would buy them. After Carlo mentioned to Kelly that the defendant had a machine gun, Kelly kept up a barrage of telephone calls to Carlo, pressuring him to keep trying to get the defendant to sell the gun to Kelly in New York. It appears that the telephone calls which led to the consummation of the machine gun transaction were decidedly one sided. Kelly made frequent calls to Carlo and Carlo in turn made frequent calls to Toomey. There is no evidence of Toomey's calling Carlo. Carlo presented Kelly to Toomey as a collector of guns and when the price reached $400, the defendant succumbed.

On learning that defendant had a machine gun, Kelly made no effort to advise his colleagues in the Bureau of Alcohol, Tobacco & Firearms in Connecticut of this fact so that they could investigate the matter. Instead, he had defendant lured into territory where he had jurisdiction to arrest him.

*Discussion*

The fact that the government has agreed to dismissal of Counts Two through Five indicates, I gather, that it views Kelly's conduct in luring the defendant into New York as wrongful and as an improper basis upon which the defendant may be prosecuted for illegal transfer and illegal transportation of firearms. Only Count One charging ille-

gal possession of an unregistered firearm remains to be considered.

Title 26, United States Code, §§ 5861(d) and 5845 make it unlawful to possess a firearm not registered in the National Firearms and Transfer Record.[1] There is no controversy in respect of defendant's possession of the machine gun and his failure to register it under the National Firearms Registration and Transfer Record. I agree with the government's contention that the possession must be willful and knowing and in the Southern District of New York.

Toomey claimed no knowledge of the registration statute, but his testimony reflected that he had some awareness of it and of an amnesty period after it was passed. The government asserts quite properly that ignorance of the law is no defense, *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (dictum); *United States v. Gris,* 247 F.2d 860, 864 (2d Cir. 1957); and that knowledge by the defendant that he had the gun is sufficient to establish willful and knowing possession. I agree. In *United States v. Freed,* 401 U.S. 601, 607–10, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), the Supreme Court held that " 'vicious will' or *mens rea*" is not required by 26 U.S.C. § 5861(d). Specific intent or knowledge that the firearm is not registered is not needed. Knowledge that the instrument possessed was a firearm is adequate. Therefore, the defendant's possession of the machine gun was willful and knowing within the meaning of the statute.

The defendant urges entrapment as a defense to the final ingredient of the crime—that he possessed the gun in New York. The essence of this defense is that the crime was not a product of the defendant's own intention to engage in a criminally proscribed act but that the infraction was caused by and resulted from the instigation of government agents. Evaluation of the defense of entrapment requires that two issues be determined: (1) whether government inducement to commit a crime is established, and (2) whether despite and independent of such inducement the defendant possessed the requisite propensity to commit the crime in any event. As stated by Judge Learned Hand:

> "[I]n [entrapment] cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence."

*United States v. Sherman,* 200 F.2d 880, 882 (2d Cir. 1952).[2]

In *United States v. Braver,* 450 F.2d 799, 805 (2d Cir. 1971), *cert. denied* 405 U.S. 1064, 92 S.Ct. 1493, 31 L.Ed.2d 794 (1972), a jury charge based on Judge Hand's formulation was accepted. The court, per Judge Feinberg, explained that it is:

> "enough to tell the jury that if it finds some evidence of government initiation of the illegal conduct, the Government has to prove beyond a reason-

---

1. Section 5861(d) provides:
   "It shall be unlawful for any person—
   (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record . . . .."
   Section 5845(b) provides:
   "The term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any combination of parts

designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."
   Section 5845(a) defines a "firearm" to include "a machinegun."

2. The defendant in that case was retried and on appeal the Supreme Court ruled that he had been entrapped as a matter of law. *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

able doubt that the defendant was ready and willing to commit the crime."

Judge Feinberg also specifically approved in this regard the charge used in *United States v. Berger,* 433 F.2d 680, 684 (2d Cir. 1970), *cert. denied,* 401 U.S. 962, 91 S.Ct. 970, 28 L.Ed.2d 246 (1971), in which the court told the jury that the defendant had to:

> "[A]dduce some evidence that a government agent by initiating the illegal conduct himself induced the defendant to commit the offense. If you find that the defendant . . . has adduced such evidence then the government must prove beyond a reasonable doubt that the inducement was not the cause of the crime, that is, that the defendant . . . was ready and willing to commit the offense."

*United States v. Braver, supra,* 450 F.2d at 805.

■ I am convinced from the credible evidence presented at trial that Toomey had no predisposition to bring this machine gun—his World War II souvenir—into the Southern District of New York and would not have done so without the instigation of Agent Kelly through Carlo, his informant. Anticipating this conclusion, the government asserted in its closing argument that the defense of entrapment is of no avail to Toomey for his unlawful possession of the machine gun in his home in Connecticut since this possession predated his involvement with Kelly.

■ The government is certainly correct that Toomey was not entrapped into possessing the machine gun in his home in Connecticut without registering it under the terms of Title 26, U.S.C. Sections 5861(d) and 5845. However, since as finder of the facts I have concluded that Toomey committed no crime in the Southern District of New York, I must now conclude that venue is improperly laid in this district for illegal acts taking place entirely within the State of Connecticut.

■ A criminal defendant cannot be convicted if venue is improper. *Travis v. United States,* 364 U.S. 631, 634, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); *United States v. Cores,* 356 U.S. 405, 407, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958); *Johnston v. United States,* 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956); *United States v. Johnson,* 323 U.S. 273, 275–76, 65 S.Ct. 249, 89 L.Ed. 236 (1944); *United States v. Walden,* 464 F.2d 1015, 1017 (4th Cir.), *cert. denied* 409 U.S. 867, 93 S.Ct. 165, 34 L.Ed.2d 116 (1972); *United States v. Swann,* 142 U.S.App.D.C. 363, 441 F.2d 1053, 1055 (1971); *United States v. Rivera,* 388 F.2d 545, 547–48 (2d Cir.), *cert. denied* 392 U.S. 937, 88 S.Ct. 2308, 20 L.Ed.2d 1396 (1968); *United States v. Gross,* 276 F.2d 816, 818–19 (2d Cir.), *cert. denied* 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960); *United States v. Provoo,* 215 F.2d 531, 537 (2d Cir. 1954); *United States v. Flaxman,* 304 F.Supp. 1301, 1302–03 (S.D.N.Y.1969). Venue is a necessary part of the government's case. *United States v. Buckhanon,* 505 F.2d 1079, 1083 (8th Cir. 1974); *United States v. Rivera, supra; United States v. Gross, supra.* Venue need not be proved beyond a reasonable doubt, but the government has the burden of proving that some criminal act was committed in this district. *United States v. Gross, supra; United States v. Jones,* 174 F.2d 746, 748–49 (7th Cir. 1949). Defects of venue in a criminal case do not destroy the court's jurisdiction to hear the case. Rather, if venue is not proved by the government or waived by the defendant, the prosecution's case is incomplete and the defendant must go free. *United States v. Walden, supra,* 464 F.2d at 1020–21 (4th Cir. 1972).

The requirement of venue cannot be taken lightly. This requirement reflects the specific Constitutional protection that: "The Trial of all Crimes . . .

shall be held in the State where the said Crimes shall have been committed . . . .." U.S.Const. art. III, § 2, cl. 3. As the Supreme Court has said:

> "Questions of venue in criminal cases, . . . are not merely matters of formal legal procedure. They raise deep issues of public policy . . .." *United States v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944).

In addition, the requirement of proper venue has been embodied in Rule 18 of the Federal Rules of Criminal Procedure.

■ Defects of venue can be waived by the defendant by failure to raise them soon enough. *See, United States v. Price*, 447 F.2d 23, 27 (2d Cir.), *cert. denied* 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971), and cases cited therein. In this case, there is no hint of waiver. No defect appears in the indictment; so the government cannot claim that by going to trial without protesting improper venue the defendant waived his objections. *United States v. Brothman*, 191 F.2d 70, 72 (2d Cir. 1951). The government did not suggest until its closing argument that it sought conviction based solely on Toomey's possession of the gun in Connecticut. The government's closing argument came almost directly after the court agreed to dismiss Counts Two through Five of the indictment.

■ In his closing argument the defendant immediately challenged the government's contention that he could be convicted in New York for offenses committed in Connecticut. It is clear, therefore, that Toomey did not waive defects in venue and that the government has failed to show any criminal activity by the defendant in the Southern District of New York.

Accordingly, Count One is dismissed. So ordered.