# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

―――――――――

m 01-50438

―――――――――

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

SERGIO LUIS DELGADO-NUÑEZ,
A.K.A. SERGIO LUIS DELGADO,

Defendant-Appellant.

―――――――――――――――

Appeal from the United States District Court
for the Western District of Texas

―――――――――――――――

June 20, 2002

Before REAVLEY, SMITH, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

Sergio Luis Delgado-Nuñez ("Delgado"), then a permanent resident of the United States, was deported in 1994 following a felony drug conviction. In 1997, he illegally reentered the United States using his old green card. After having been arrested for an unrelated offense, he was found by an INS agent in Big Spring, Texas, in September 1997. Big Spring is in the Northern District of Texas.

While in custody at Big Spring, Delgado admitted to the INS agent that he had reentered the United States illegally. From September 1997 to September 1999, he remained in state law enforcement custody at various locations. He eventually was transported by

state authorities to San Antonio in the Western District of Texas.

In December 1999, Delgado was convicted, in the United States District Court for the Western District of Texas, of illegal presence in the United States under 8 U.S.C. § 1326 (1994) and received a 150-month sentence. He appeals the conviction and sentence, claiming that trial in the Western District violated his Sixth Amendment venue rights, that the district court erred in departing upward from the sentencing guidelines, and that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), his indictment was required to allege that his prior deportation was the result of a felony conviction. Finding no error, we affirm.

## II.
### A.

We first address Delgado's venue claim. The standard of review is in dispute, with Delgado claiming that *de novo* review applies, while the government argues that it should be abuse of discretion. As a general rule, "constitutional and other legal questions" are reviewed *de novo. United States v. Brown*, 250 F.3d 907, 912 (5th Cir.), *cert. denied*, 531 U.S. 1111 (2001). But, "[w]e review *all* questions concerning venue under the abuse of discretion standard."[1] In practice, however, "[l]ittle turns . . . on whether we label review of this particular question abuse of discretion or *de novo*, for an abuse-of-discretion standard does not mean a mistake of law is beyond

appellate correction." *Koon v. United States*, 518 U.S. 81, 100 (1996). Thus, abuse of discretion review of purely legal questions such as those raised by Delgado is effectively *de novo*, because "[a] district court by definition abuses its discretion when it makes an error of law." *Id.*

### B.

The district court held that Delgado waived his objection to venue by failing to raise it before or during trial. "A defendant indicted by an instrument which lacks sufficient allegations to establish venue waives any future challenges by failing to object before trial. In situations where adequate allegations are made but the impropriety of venue only becomes apparent at the close of the government's case, a defendant may address the error by objecting at that time, and thus preserving the issue for appellate review." *United States v. Carreon-Palacio*, 267 F.3d 381, 392-93 (5th Cir. 2001).

The key point is that, under *Carreon-Palacio*, objection at the close of trial is appropriate solely where "the impropriety of venue only becomes apparent at the close of the government's case." *Id.* The opinion in *United States v. Black Cloud*, 590 F.2d 270 (8th Cir. 1979), on which *Carreon-Palacio* relied, is even more unequivocal on this point. *See Carreon-Palacio*, 267 F.3d at 392 (relying on *Black Cloud* as "helpful and persuasive" authority). It held that "venue objections are waived unless made prior to trial" in all cases except "when an indictment contains a proper allegation of venue *so that the defendant has no notice of a defect of venue until the government rests its case*." *Black Cloud*, 590 F.2d at 272 (emphasis added). Four other circuits have adopted rules similar to that of *Black Cloud*, holding that the venue issue is

---

[1] *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997) (emphasis added); *cf. United States v. Hemmingson*, 157 F.3d 347, 355-56 (5th Cir. 1998) (distinguishing "questions of constitutional law" from "venue and severance decisions" and holding that the latter are reviewed only for abuse of discretion).

waived when not raised before or during trial unless the defendant lacked notice of the venue defect in question.[2]

The problem for Delgado is that the facts underlying his claimSSparticularly that the INS had first discovered him in 1997 in the Northern DistrictSSwere already known to him at the start of trial. Therefore, his failure to object at that time or at any time during trial is decisive. He certainly had enough "notice of a defect of venue" to be able to assert, before trial, the same claim he now raises on appeal. *Id.*

A holding that Delgado did not waive his venue claim under these circumstances would create severe perverse incentives for criminal defendants in any case in which there are doubts over the legitimacy of venue. A defendant would be able to game the system and obtain a free second shot at an acquittal by waiting for his trial to conclude and then chal-

---

[2] *See United States v. Sandini*, 803 F.2d 123, 127 (3d Cir. 1986) (holding that venue objection not raised before the close of trial is waived unless "the defendant has no notice that a facially proper allegation of venue is in fact defective"); *United States v. Melia*, 741 F.2d 70, 71 (4th Cir. 1984) (holding that objections to waiver must be made before trial "when the defect is apparent on the face of the indictment"); *United States v. Jackson*, 482 F.2d 1167, 1179 (10th Cir. 1973) (holding that "[i]mproper venue may be waived when it is apparent on the face of the indictment that the case should be tried elsewhere"); *United States v. Brothman*, 191 F.2d 70, 72 (2d Cir. 1951) (holding that "[w]here the indictment discloses lack of venue, going to trial without objection to venue is a waiver" and "that the same result may follow if the defendant is warned of the defect during the trial"), *overruled on other grounds*, *United States v. Reed*, 773 F.2d 477 (2d Cir. 1985).

lenging venue in the event of a conviction. Even ifSSlike DelgadoSShe was well aware of the potential defect in venue, he would have every incentive to forego an improper venue claim until after the trial is over. Accordingly, Delgado waived any claim to improper venue.

## III.

Delgado argues that the district court improperly departed from the sentencing guidelines in giving him a 150-month sentence. A departure from the guidelines is reviewed for abuse of discretion. *United States v. Nevels*, 160 F.3d 226, 229 (5th Cir. 1998). "There is no abuse of discretion if the judge provides acceptable reasons for departure and the degree of departure is reasonable." *Id.* at 229-30.

The relevant sentencing guideline, U.S.S.G. § 4A1.3, allows upward departures if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." One such circumstance is where a defendant "had previously received an extremely light sentence for a serious offense." U.S.S.G. § 4A1.3, p.s.

Delgado had an extensive criminal history. His offenses include three DWI convictions for which he received very light sentences and for which no criminal history points were assessed. One of the DWI's had resulted in an accident and, in another, Delgado was driving over one hundred miles per hour. Even considering the DWI's alone, it was certainly not unreasonable for the court to conclude that their exclusion from the criminal history led to an underestimation of "the seriousness of the defendant's past criminal conduct." U.S.S.G.

§ 4A1.3. Under a deferential abuse of discretion standard, there is no reason to reverse.

Relying on some comments by the district court, Delgado claims that the departure was based on a judgment that his offenses "had not, in the district court's view, been adequately punished" rather than on an assessment of the criminal history. Even if this characterization of the court's reasoning is accurate, there would be no abuse of discretion. The comment to the relevant guideline notes that courts can take into account the fact that a defendant had "received what might now be considered extremely lenient treatment in the past." U.S.S.G. § 4A1.3, comment. The guidelines' commentary is given controlling weight if it is not plainly erroneous or inconsistent with the guidelines. *Stinson v. United States*, 508 U.S. 36, 42-45 (1993).

## IV.

Delgado argues that, under *Apprendi*, his indictment was required to allege that his prior deportation was the result of a felony conviction and that, because it did not do so, his sentence should be reduced accordingly. As both sides recognize, Delgado's argument is barred by existing Supreme Court and Fifth Circuit precedent.

*Apprendi* does require that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The Court earlier had held, however, in a § 1326 case similar to this one, that the government is not "required to prove to the jury that the defendant was previously deported subsequent to a conviction for commission of an aggravated felony." *Almendarez-Torres v. United States*, 523 U.S. 224, 234-35 (1998) (quotation omitted). We have established that *Apprendi* did not overrule *Almendarez-Torres*, which therefore remains good law. *See United States v. Dabeit*, 231 F.3d 979, 984 (5th Cir. 2000) (holding that *Apprendi* "expressly declined to overrule *Almendarez-Torres*," which therefore remains binding), *cert. denied*, 531 U.S. 1202 (2001).

AFFIRMED.

DENNIS, Circuit Judge, dissenting:

I respectfully dissent from the majority's decision finding that Delgado-Nunez waived any claim to improper venue. Moreover, because venue was improper in the Western District of Texas where he was tried, I would reverse and vacate the district court's decision.

"A defendant's right to be tried in the district in which the crime took place finds its roots in both the Constitution and federal statutory law."[3] Article III, Section 2, Clause 3, states that "[t]rial shall be held in the State where the said Crimes shall have been committed."[4] Furthermore, the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . t rial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."[5] Similarly, Federal Rule of Criminal Procedure 18 provides that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."[6]

<u>Waiver of Venue Rights</u>

Despite the constitutional dimension of venue, the standard for finding waiver of venue rights is more relaxed than the standard for waiver of other constitutional rights.[7] That is, a defendant may waive his right to venue by silence or inaction (i.e., by not asserting his objection prior to trial).[8] But,

---

[3] United States v. Carreon-Palacio, 267 F.3d 381, 390 (5th Cir. 2001).

[4] U.S. Const. art. III, § 2, cl. 3.

[5] U.S. Const. amend. VI.

[6] Fed. R. Crim. P. 18.

[7] Carreon-Palacio, 267 F.3d at 391.

[8] Id.

as this court has noted, this broad waiver rule "does not accurately reflect the law in this circuit."[9]

That is, [w]aivers of venue rights by silence are not to be readily inferred"[10] and waiver "has an

exceedingly narrow application when a criminal defendant claims the government has failed to prove

proper venue."[11]  In fact, "all circuits reaching this question have mitigated the harness of th[e]

[waiver] rule by holding that venue objections are waived *only* 'when the indictment . . . clearly

reveals [the venue] defect but the defendant fails to object.'"[12]  In other words, venue is not waived

by failure to object prior to trial if "the alleged defect in venue was not apparent *on the face* of the

indictment."[13]  "On its face, . . . [an] indictment allege[s] proper venue [if] it allege[s] facts which,

if proven, would . . . sustain[] venue in" the district alleged,[14] as "only the indictment may be

---

[9] Id. at 392 n.28

[10] Id. at 391. See also United States v. Stratton, 649 F.2d 1066, 1078 n.17 (5th Cir. Unit A. 1981).

[11] United States v. Gross, 276 F.2d 816, 819 (2d Cir. 1960).

[12] United States v. Sandini, 803 F.2d 123, 127 (3d Cir. 1986) (quoting United States v. Price, 447 F.2d 23, 27 (2d Cir. 1971)) (emphasis added).

[13] United States v. Ruelas-Arreguin, 219 F.3d 1056, 1060 (9th Cir. 2000) (emphasis added). See also Carreon-Palacio, 267 F.3d at 392-93 ("A defendant indicted by an instrument which *lacks sufficient allegations to establish venue* waives any future challenge by failing to object before trial.") (emphasis added); 2 Charles Alan Wright et al., Federal Practice and Procedure, § 306 (3d ed. 2000) ("If the fact of improper venue is apparent on the face of the indictment or information, a defendant is held to have waived venue by failing to object prior to going to trial or pleading guilty.  If there is a proper allegation of venue, but the proof fails to support the allegation, the objection can be raised at the close of all the evidence.").

[14] Ruelas-Arreguin, 219 F.3d at 1060 (emphasis added); United States v. Bohle, 445 F.2d 54, 59 (7th Cir. 1971) ("An indictment alleges proper venue when it alleges facts which, if proven, would sustain venue."), overruled on other grounds, United States v. Lawson, 653 F.2d 299 (7th Cir. 1981). Cf. 4 Wayne R. LeFave et al., Criminal Procedure, § 16.1(h), at 508 (2d ed. 1999) ("[W]here the indictment or information alleged events or results in the district that would not properly establish venue there even if proven, the defendant must object pretrial.").
An example of an indictment defective on its face appears in Bohle, where a defendant was arrested for aircraft piracy in New York and indicted in Indiana (his last place of residency), despite the statutory venue requirement that "the trial shall be in the district where the offender . . . is arrested or is first brought," unless

(continued...)

6

considered in pretrial motions for lack of venue, and [] the allegation must be taken as true."[15]

Here the indictment states:

That on or about September 29, 1999, in the Western District of Texas, Defendant, SERGIO LUIS DELGADO-Nunez, a/k/a Sergio Luis Delgado, an alien, attempted to enter, entered, and was found in the United States having previously been denied admission, excluded, deported, and removed therefrom on or about October 31, 1994, and that the Defendant had not received the consent of the Attorney General of the United States to reapply for admission to the United States, being voluntarily in the United States unlawfully, in violation of Title 8 United States Code, Section(s) 1326.

On its face, this indictment does not reveal a defect in venue. That is, if the allegations in the indictment were true, venue would exist in the Western District of Texas. Thus, I would find that Delgado-Nunez did not waive his objection to venue by failing to raise the issue prior to trial.[16]

The majority, however, takes a much broader approach to waiver and seems to hold that any argument with respect to venue must be raised prior to trial. The key point for the majority is not whether the indictment was facially proper, but whether the defendant

---

[14](...continued)
"such offender . . . [is] not so arrested or brought into any district, [in which case] an indictment or information may be filed in the district of the last known residence." Bohle, 445 F.2d at 57. There the court found the defendant waived his objection to venue by waiting until the close of the government's case because "the indictment alleged facts which, even if proven, would not sustain venue." Id. at 59.

[15] United States v. Mendoza, 219 F.3d 1155, 1156 (9th Cir. 1997).

[16] The majority's statement that Delgado-Nunez failed "to object [prior to trial] or at any time during trial" does not accurately reflect the facts in the record. During the bench trial, Delgado-Nunez asked for and was granted permission to file a written Rule 29 motion for acquittal after trial. The written motion, detailing the objection to venue, was filed before the district judge rendered his verdict. See, e.g., Ruelas-Arreguin, 219 F.3d at 1059.

7

had any notice of a potential defect in venue, despite a facially proper indictment. Moreover, the majority concludes that Delgado-Nunez waived any objection to venue by not objecting pre-trial because he had notice of a potential defect in venue before going to trial. For its rationale, the majority relies upon broad language in the "helpful and persuasive" case from the Eighth Circuit, United States v. Black Cloud.[17] Far from endorsing the majority's broad view of waiver, however, the court in Black Cloud merely articulated lack of notice as one reason why defective indictments need not be challenged prior to trial, i.e., "when an indictment contains a proper allegation of venue so that the defendant has no notice of a defect of venue until the government rests its case, the objection is timely if made at the close of the evidence."[18] The court in Black Cloud (a case involving the illegal receipt of a firearm by a convicted felon) did not, as the majority does here, find a waiver of the defendant's venue rights because he waited to object until the close of the government's case. Instead, the court found that the defendant did not waive his challenge that the government had failed to prove that he received the firearm in the district in North Dakota where the prosecution was brought because the "indictment specifically charged [the defendant] with having received the firearm in question in the District of North Dakota."[19]  Id. at 271-72.

More importantly, this court, in its most recent pronouncement on the waiver-of-venue issue,

---

[17] 590 F.2d 270 (8th Cir. 1979).

[18] Id. at 272.  United States v. Perez, 280 F.3d 318, 328 (3d Cir. 2002) ("Where an indictment alleges venue on its face without an obvious defect, defendant has no notice that a facially proper allegation of venue is in fact defective, and thus there can be no waiver until the close of the government's case.").

[19] The same is true of at least two of the four other circuit cases cited by the majority. See, e.g., United States v. Sandini, 803 F.2d 123, 127 (3d Cir. 1986) (The defendant "has not waived his right to object to venue, because venue in the Western District of Pennsylvania was properly alleged in Counts II and IV of the indictment. . .."); United States v. Melia, 741 F.2d 70(4th Cir. 1983) (Finding no waiver because "[t]he rule that the objection must be made before trial applies only when the defect is apparent on the face of the indictment" and here "[t]here was no defective allegation of venue in Melia's indictment.").

Carreon-Palacio, expressly did not employ the majority's broad approach to waiver, despite the urging of Judge Emilio Garza in a specially concurring opinion.[20] In Carreon-Palacio, the defendant, after transporting marijuana from Texas to North Carolina, was arrested and first indicted in North Carolina for possession with intent to distribute.[21] Although the government dismissed the North Carolina indictment and re-indicted the defendant in the Western District of Texas, the defendant waited until the government rested to complain of venue.[22] In addressing the defendant's venue challenge on appeal, this court quoted from Black Cloud: "[W]hen an indictment contains a proper allegation of venue so that defendant has no notice of a defect of venue until the government rests its case, the objection is timely if made at the close of the evidence."[23] "[A]pplying the rationale of Black Cloud," the court found *no waiver* despite the defendant's knowledge that he was arrested in and first indicted in North Carolina, because "[t]he indictment alleged possession of marijuana in the Western District of Texas, thus Lopez had no basis to complain of venue until the government rested."[24] Judge Emilio Garza, in a separate opinion, urged the majority to adopt the same broad waiver rationale the majority accepts here: "[R]ed flags for venue would have been clear to [the defendant] prior to trial. [The defendant] was arrested in North Carolina and all three defendants were initially indicted in North Carolina, suggesting North Carolina as the situs of the charges. The government then dismissed the indictment and re-indicted the defendants on essentially the same

---

[20] Carreon-Palacio, 267 F.3d at 390-94.

[21] Id. at 385.

[22] Id.

[23] Id. at 393.

[24] Id.

9

charges in the Western District of Texas. This circumstance put [the defendant] *on notice of a potential venue problem* despite the government's proper allegations of venue in the indictment. . . . I would hold that Lopez waived his objection to venue."[25]

Moreover, the majority ignores the closely analogous and equally "helpful and persuasive" Ninth Circuit case, United States v. Ruelas-Arreguin, in which the court there expressly did not adopt the broad approach to waiver that the majority advances here.[26] In Ruelas-Arreguin, the court addressed whether a defendant charged with the very same crime at issue here, illegally reentering and being found in the United States without authorization from the attorney general, could be tried in the Southern District of California, even though he was "found in" and arrested in Arizona.[27] As the defendant objected to venue after the government's case-in-chief, the court began its analysis by examining whether the defendant waived his objection to venue.[28] Because the defect in venue was not apparent on the face of the indictment (i.e., the indictment alleged sufficient facts that, if true, would have sustained venue in the Southern District of California), the court found that Ruelas-Arreguin preserved his objection to venue by moving at the close of the government's case.[29]

The majority's approach essentially relieves the government of its burden of proof on venue, an essential element of the offense.[30] For example, here the defendant is charged with a § 1326 crime

---

[25] Id. at 394 (Garza, J., concurring) (emphasis added).

[26] 219 F.3d 1056 (9th Cir. 2000).

[27] Id. at 1059.

[28] Id. at 1060.

[29] Id.

[30] "Venue is an element of the offense, [and] the prosecution always bears the burden of proving that the
(continued...)

of illegally reentering and being found in the United States without the consent of the attorney general. Courts have found a § 1326 crime to be a continuing offense, commencing with illegal reentry and completed upon being "found" in the United States.[31] Because a § 1326 crime is committed when a defendant illegally reenters the country without authorization and continues until he is "found" by immigration authorities,[32] venue could have been proper anywhere Delgado-Nunez might have been prior to being "found" by the INS.[33] Here, Delgado re-entered the country in Laredo Texas, the Southern District of Texas in late 1996 or early 1997. According to the INS, it first discovered him in the Northern District of Texas in September of 1997. State law enforcement officials moved him to various locations within Louisiana and Texas until 1999, when Agent Niles encountered him and indicted him in San Antonio, Texas, the Western District of Texas. Delgado-Nunez's whereabouts between late 1996 or early 1997 (when he reentered this country) and September 1997 (when he was first discovered by the INS) are largely unaccounted for. At trial, the

---

[30](...continued)
trial is in the same district as the crime's commission." Carreon-Palacio, 267 F.3d at 390-91. See also United States v. Winship, 724 F.2d 1116, 1124 (5th Cir. 1984) ("Venue is an element of any offense; the prosecution always bears the burden of proving that the trial is in the same district as the crime's commission."); United States v. Jones, 174 F.2d 746, 748 (7th Cir. 1949) ("One of the things the Government has the burden of proving is venue. It is an essential part of the Government's case. Without it, there can be no conviction."); United States v. Toomey, 404 F. Supp. 1377, 1381 (S.D.N.Y. 1975) ("Venue is a necessary part of the government's case."); 4 Wayne R. LeFave et al., Criminal Procedure, § 16.1(g), at 499-500 (2d ed. 1999) (footnotes omitted)("In the federal system and the vast majority of states, venue is not simply a prerequisite that the defendant may choose to challenge pretrial; it is viewed as part of the case that the prosecution must prove at trial.").

[31] Ruelas-Arreguin, 219 F.3d at 1061.

[32] See discussion infra pp. 13-17.

[33] Delgado-Nunez essentially argues this point in his brief, "Until trial, Delgado did not know whether the Government would present evidence that he was found in the Western District before INS agents found him in 1997." Reply Br. at 11.

11

government introduced no evidence that during that time Delgado-Nunez was present in the Western District of Texas,[34] as was done in Ruelas-Arreguin.[35] Thus, given the government's facially proper allegation of venue in the Western District of Texas in the indictment, Delgado-Nunez should not be penalized for putting the government to its burden of proof.

Improper Venue

Because I find no waiver, I must examine whether venue was, nonetheless, proper in the Western District of Texas. As explained above, venue is constitutionally and statutorily required where the crime or offense is committed.[36] "The clear language in 8 U.S.C. § 1326(a)(2) provides three separate occasions upon which a deported alien may commit the offense: 1) when he illegally enters the United States; 2) when he attempts to illegally enter the United States; or 3) when he is at any time found in the United States."[37] Section 1329 of Title 8 further provides that "[n]otwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violations may occur or at which the person charged with a violation under section 1325 or 1326

---

[34] In fact, even on appeal, the government raises no argument that Delgado-Nunez was ever in the Western District of Texas prior to being found in the Northern District in 1997, but instead relies upon its argument (addressed below) that venue was proper in the Western District because Delgado-Nunez was present there, after being "found in" the Northern District.

[35] Ruelas-Arreguin, 219 F.3d at 1059, 1061 (Although the Ninth Circuit in this case found no waiver, it held that venue was proper in the Southern District of California, because § 1326 is a continuing offense and the defendant before his arrest in Arizona, was transported through the Southern District of California.).

[36] U.S. Const. amend. VI; Fed. R. Crim. P. 18.

[37] United States v. Santana-Castellano, 74 F.3d 593, 597 (5th Cir. 1996).

of this title may be apprehended."[38] Also relevant is the venue statute for continuing offenses, which provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."[39]

The government makes no argument and introduced no evidence at trial that Delgado-Nunez either entered or attempted to enter the United States in the Western District of Texas  The government, instead, contends that Delgado-Nunez was "found in" the Western District of Texas when Agent Niles encountered him in San Antonio in 1999.  The government argues that although the INS initially identified the Defendant in the Northern District of Texas in 1997, venue is proper in the Western District of Texas because the offense of illegal reentry is a continuing one, making venue proper  anywhere Delgado-Nunez went or anywhere he was transported until the time of his arrest in 1999.  Also, the government contends venue is proper in the Western District because the special venue statute for this crime, § 1329, allows for venue anywhere the defendant "may be apprehended."

Although this circuit has not addressed when a defendant is "found in" the United States *for purposes of venue*, it has previously concluded that the "found in" crime continues until the INS discovers the defendant, albeit for purposes of the Sentencing Guidelines.[40]  Moreover, the Ninth

---

[38] 8 U.S.C. § 1329.

[39] 18 U.S.C. § 3237.

[40] United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996) ("[W]e hold that a previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to the immigration authorities."; "[A] 'found in' violation is a continuing violation until the date the alien is discovered by immigration authorities.
(continued...)

13

Circuit has recently addressed this very same venue question before us now in United States v. Hernandez, and similarly concluded that a "found in" crime continues until the defendant is discovered by the INS.[41] In Hernandez, the defendant, who was arrested in Oregon on traffic violations, was interviewed while in Oregon state prison by an INS agent who determined that the defendant was illegally in the United States in violation of § 1326.[42] After the defendant was transferred to and prosecuted in Washington for an outstanding state arrest warrant there, another INS agent again interviewed him and similarly determined that he was illegally in the United States in violation of § 1326.[43] Upon completion of his state sentence, the defendant was indicted by the INS in the Western District of Washington.[44] Concluding that the crime of being "found in" the United States under § 1326 continues until the defendant is discovered by the INS, the Ninth Circuit found venue to be improper.[45] The court reasoned as follows:

The offense of being found in the United States ends when an alien is discovered and identified by the immigration authorities. We conclude that the crime is completed at that point not only for statute of limitations and Sentencing Guidelines purposes, but also for venue. To hold

---

[40](...continued)

. . ."); United States v. Reyes-Nava, 169 F.3d 278, 280 (5th Cir. 1999) ("[A] previously deported alien is 'found in' the United States when his physical presence is discovered and noted by immigration authorities."); United States v. Corro-Balbuena, 187 F.3d 483, 485 (5th Cir. 1999) (A 1326 offense "begins at the time the defendant illegally reenters the country and does not become complete unless or until the defendant is found by the INS in the United States.")

[41] 189 F.3d 785, 789 (9th Cir. 1999).

[42] Id.

[43] Id.

[44] Id.

[45] Id.

otherwise would produce unfair and absurd results. For example, venue would become the "government's choice" rather than a constitutional guarantee. Under the government's scenario, a defendant could be "found" again and again. Or a deported alien who was moved around the country to various penal institutions could be prosecuted, at the government's option, in any of the districts where the alien set foot.[46]

The court in Hernandez also addressed the venue issue under § 1329, which seems to allow prosecution of the defendant wherever he is apprehended, and under the continuing offense venue statute, § 3237, which allows prosecution wherever the offense was begun, continued, or completed. With regard to § 1329, the court concluded that "being 'apprehended' is not the crime with which [the defendant] was charged and the place of apprehension is not necessarily the district where the crime was committed."[47] The court "decline[d] to read section 1329 to provide for venue in a district other than where the crime of being 'found in' the United States was committed."[48] With respect to § 3237, the court rejected the idea that the defendant could be prosecuted wherever he ended up, as a § 1326 violation ends when the alien is discovered by the INS.[49] "[E]ven continuing offenses are completed at some point."[50] The court concluded, "Neither the Constitution nor section 3237 permits venue in a location in which the defendant happens to be after the crime was completed, unless the

---

[46] Id. at 791. See also United States v. Herrera-Ordones, 190 F.3d 504, 510 (7th Cir. 1999) (holding that an alien is "found in" the United States for purposes of venue "when the INS both discovers his presence in the United States and knows that, because of his identity and status, his presence here is illegal").

[47] Hernandez, 189 F.3d at 791.

[48] Id. at 792.

[49] Id. at 790.

[50] Id. at 791.

15

defendant began, continued, or completed his crime in that venue."[51]

I find the rationale of the Ninth Circuit to be both wholly persuasive[52] and constitutionally mandated.[53]  Here, the evidence showed that Delgado had been deported in 1994; that he reentered the country in either December 1996 or January 1997 by using an old green card; and that, at Big Spring, Texas, he gave a statement to an INS agent in September 1997 admitting that he had been previously removed from the United States by the INS.  Thus, the evidence indicates that the INS was aware or should have been aware with reasonable diligence that Delgado was in the country illegally in 1997 in Big Spring, Texas -- the Northern District.[54]  Because the government has introduced no evidence to show that Delgado-Nunez was in the Western District of Texas at some time prior to being "found in" the Northern District of Texas in September 1997, I conclude that venue was improper in the Western District of Texas, and would reverse and vacate the district court's judgment to the contrary.

---

[51] Id.

[52] The Government contends that Delgado's case is not like Hernandez, as here the government was not in continuous custody of the defendant after first discovering him.  That is, when Agent Niles encountered Delgado-Nunez in San Antonio, he had be released on bail and had to be re-arrested by the Bexar County Sheriff.  The Government therefore suggests that § 1329's allowance of venue where the defendant is apprehended is proper in this case and that venue existed in the Western District because Delgado-Nunez was not in custody when Niles encountered him in San Antonio.  While lack of continuous custody of Delgado-Nunez is a difference from Hernandez, the fact remains that if a "found in" violation is complete when the INS knows of the illegality of an alien's presence in this country, then further transportation of the defendant into different districts by either the state or federal government is irrelevant for purposes of venue.

[53] "Congress lacks power to provide for trial in a district other than that in which the offense was committed. . . ."  2 Charles Alan Wright, Federal Practice & Procedure, § 302, at 8 (Supp. 2002).  Any other determination would implicate severe Constitutional protections afforded by the Sixth Amendment.  See Hernandez, 189 F.3d at 792.

[54] See also Hernandez, 189 F.3d at 791; Bencomo-Castillo, 176 F.3d at 1303-04.

16