**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arturo HERNANDEZ, Defendant–
Appellant.**

**No. 97–30201.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1999

Filed Aug. 17, 1999

Peter Offenbecher, Assistant Federal Public Defender, Seattle, Washington, for the defendant-appellant.

Holly E. Morris, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

Before: DONALD P. LAY,[1] ROBERT R. BEEZER, and M. MARGARET McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

We are faced here with the task of reconciling an immigration statute providing venue where a defendant was "apprehended" with the constitutional guarantee that a defendant must be tried where the crime was committed. Specifically, we must decide where the crime was committed in the case of a deported alien prosecuted for being "found in" the United States, a violation of 8 U.S.C. § 1326. This analysis in turn is determinative of whether venue was proper. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for a transfer of venue. We hold that prosecution in the Western District of Washington was improper because the defendant committed and completed the offense of being "found in" the United States in Oregon.

## BACKGROUND

The essential facts are undisputed. On September 10, 1996, Arturo Hernandez was arrested in Portland, Oregon for a traffic violation. While Hernandez was in

1. Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

jail in Multnomah County, Oregon, an agent of the Immigration and Naturalization Service ("INS") interviewed Hernandez, identified him, and determined that he was in the United States illegally and subject to prosecution under 8 U.S.C. § 1326. The United States concedes that Hernandez was "found in" the United States in Oregon.

The INS agent in Portland did not present the case to the United States Attorney for the District of Oregon. Instead, the agent recommended that criminal prosecution under 8 U.S.C. § 1326 be initiated in Washington because of an outstanding Washington warrant for the arrest of Hernandez based on a supervised release violation. Hernandez waived extradition, and state authorities then transported him from Oregon to Washington, where he was sentenced to a short term in a Washington state prison. In October 1996, while Hernandez was serving his state sentence in Washington, another INS agent interviewed Hernandez, determined that he was subject to prosecution under 8 U.S.C. § 1326, and placed a detainer on him. Upon completion of his state sentence, the INS transported Hernandez to the INS holding facility in Seattle, and referred the matter to the United States Attorney's Office for the Western District of Washington.

The superseding indictment filed in the Western District of Washington charged that Hernandez violated 8 U.S.C. § 1326 because "[o]n or about November 13, 1996, at Seattle, within the Western District of Washington, [Hernandez] ... was found in the United States without the express consent of the Attorney General." The indictment alleged violations of sections 1326(a) (illegal re-entry by a deported alien), 1326(b)(1) (illegal re-entry by a felon), and 1326(b)(2) (illegal re-entry by an aggravated felon).

Hernandez moved to dismiss the indictment for improper venue or, in the alternative, to transfer venue to the District of Oregon. The district court denied the mo-tion and conducted a bench trial pursuant to a stipulation of facts. The parties stipulated to all of the relevant facts: Hernandez's Mexican citizenship, his prior felony conviction for possession of cocaine, his deportation, his re-entry into the United States without permission, the INS's discovery of him in Oregon, and the State of Washington's transportation of him from Oregon to Washington. At trial, the defense renewed its motion for dismissal on the grounds of improper venue and moved for a judgment of acquittal. The district court denied both motions and found the defendant guilty on count one, under 8 U.S.C. § 1326(a) and 1326(b)(1). The government dismissed the remaining two counts. Hernandez was sentenced to thirty-five months of imprisonment and three years of supervised release.

## DISCUSSION

### I. The Constitutional and Statutory Framework

■ We address the existence of venue as a question of law reviewed de novo. *United States v. Angotti*, 105 F.3d 539, 541 (9th Cir.1997). As the Supreme Court reminds us, "[q]uestions of venue in criminal cases ... are not merely matters of formal legal procedure. They raise deep issues of public policy...." *United States v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236 (1944). Indeed, the question of venue in a criminal case extends beyond public policy to specific expression in the Constitution. The right to be tried where the crime was allegedly committed is protected twice in the Constitution. Article III, section 2 provides that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed...." Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been

committed...." Rule 18 of the Federal Rules of Criminal Procedure reiterates the constitutional protection: "prosecution shall be had in a district in which the offense was committed." The touchstone in each of these provisions is the place where the crime was committed.

To determine venue, we must examine the constitutional question of where the crime was committed in light of two venue provisions enacted by Congress. The specific venue statute applicable to violations of 8 U.S.C. § 1326 provides:

> Notwithstanding any other law, such prosecutions or suits [under this subchapter] may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended.

8 U.S.C. § 1329. Also relevant is the venue statute for continuing offenses, which provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237. The specific issue presented-where venue lies if the government identifies a defendant as subject to prosecution under § 1326 in one judicial district, but facilitates transfer to another district and then chooses to prosecute the defendant in that judicial district-has not been addressed in any published federal court of appeals decision.

## II. Analysis of "Found in" under 8 U.S.C. § 1326

■ With this framework in mind, we turn to the parties' arguments about the proper venue for prosecution in this case. Hernandez argues that venue in the Western District of Washington was unconstitutional because he committed and completed the offense of being "found in" the United States in Oregon. The government concedes that Hernandez was "found in" the United States in Oregon, but argues that Hernandez was also "found in" the United States in Washington because section 1326 is a continuing offense. The government argues that the defendant's presence in a judicial district, for any reason, constitutes a violation of section 1326, permitting the government to prosecute in that venue. Alternatively, the government contends that venue in the Western District of Washington was proper under the venue statute, 8 U.S.C. § 1329, because the government "apprehended" Hernandez in Washington.

■ The Supreme Court recently provided guidance on how to determine where a crime was committed for venue purposes:

> [T]he locus delicti [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it. In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.

*United States v. Rodriguez–Moreno,* —— U.S. ——, 119 S.Ct. 1239, 1242–43, 143 L.Ed.2d 388 (1999) (internal quotation marks and citations omitted). In identifying the nature of the crime alleged, we look first at the language of the statute under which the defendant was charged. *See id.* 119 S.Ct. at 1243. Prior to *Rodriguez–Moreno,* some federal courts looked exclusively at the verbs in the statute in determining the conduct constituting the offense, but in *Rodriguez–Moreno* the Supreme Court cautioned that "[w]hile the 'verb test' certainly has value as an interpretive tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language." *Id.*

Following the Supreme Court's direction, we turn to the language of the statute under which Hernandez was charged. Section 1326 provides:

(a) **In general**

Subject to subsection (b) of this section, any alien who-

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.

**(b) Criminal penalties for reentry of certain removed aliens**

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection-

(1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both....

Hernandez was charged under sections 1326(a), (b)(1), and (b)(2), and convicted under sections 1326(a) and (b)(1).

Section 1326 criminalizes three acts by aliens who have been deported: (1) entering the United States; (2) attempting to enter; or (3) being "found in" the United States, all without permission of the Attorney General. Unlike in *Rodriguez-Moreno,* the verbs in the statute ("enters," "attempts to enter," and "is found") outline the prohibited conduct. The parties stipulated that Hernandez was deported and the government does not contend that Hernandez entered the United States in Washington,[2] so the only conduct relevant

to venue is the act of being "found in" the United States. Therefore, in this case, the inquiry of where the crime was committed and where Hernandez was found collapses into a single analysis. In order to determine where Hernandez was "found," and hence where the crime was committed, we must determine what conduct constitutes the offense of being "found in" the United States.

We have previously had occasion to interpret the "found in" language. In the context of a challenge to the statute for vagueness, we held that

[t]he plain meaning of § 1326 can easily be understood by a person of "ordinary intelligence." It prohibits a deported alien from re-entering the United States without permission. To avoid being "found in" the United States, a deported alien can either not re-enter the United States or, if he has already re-entered the United States, he can leave.

*United States v. Ayala,* 35 F.3d 423, 425 (9th Cir.1994). In a further refinement, we stated that the crime of being "found in" the United States continues until the INS discovers the defendant. *United States v. Guzman-Bruno,* 27 F.3d 420, 423 (9th Cir.1994).

Other federal courts agree that a deported alien is "found in" the United States when the alien is discovered by the authorities. *See United States v. Santana-Castellano,* 74 F.3d 593, 598 (5th Cir. 1996) ("[A] 'found in' violation is a continuing violation until the date the alien is discovered by immigration authorities...."); *United States v. Rivera-Ventura,* 72 F.3d 277, 282 (2d Cir.1995) ("[T]he offense of being 'found in' the United States in violation of § 1326(a) is not complete until the authorities both discover the illegal alien in the United States, and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his

---

2. The stipulation essentially provides that Hernandez entered surreptitiously, "on foot to avoid being inspected by the Immigration and Naturalization Service or by the United States Border Patrol."

presence.") (internal citations omitted); *United States v. Gomez*, 38 F.3d 1031, 1035 (8th Cir.1994) ("[A] 'found in' violation is a continuing violation that is not complete until the alien is 'discovered' by immigration authorities."). The Eighth Circuit recently reiterated its holding in *Gomez* that "the crime of reentry under § 1326 is an on-going offense that continues until an individual is discovered by authorities.... When an individual is 'found in' the United States, the date he or she is found is generally considered to be the date he or she violated § 1326." *United States v. Estrada–Quijas*, 183 F.3d. 758, 761–62 (8th Cir.1999) (internal citations omitted).

The precise issue in these cases was *when* a defendant completed the offense of being "found in" the United States, for purposes of the statute of limitations or the Sentencing Guidelines, as opposed to *where* a defendant committed the offense of being "found" for venue purposes. The government argues, therefore, that neither the reasoning nor the holdings of these cases is applicable to the venue question. We disagree. By articulating the act that triggers *when* a § 1326 violation is committed—the alien's discovery by the immigration authorities—these cases also provide a limit on *where* venue may lie. Under the continuing offense venue statute relied upon by the government, venue is proper where a crime began, continued, or was completed. *See* 18 U.S.C. § 3237. Neither the Constitution nor section 3237 permits venue in a location in which the defendant happens to be after the crime was completed, unless the defendant began, continued or completed his crime in that venue. Once the *when* is determined, the *where* follows as a matter of fact and logic.

The government even concedes that Hernandez was "found in" the United States in Oregon, stating in its brief that "[t]he Government does not contest the defendant's assertion that he was first 'found' as defined by *Gomez*, in Portland when [the INS agent] concluded that he was prosecutable under Section 1326." The district court agreed that Hernandez was found in Oregon: "The Court holds that defendant was 'found' as used in 8 U.S.C. § 1326 when the INS first concluded that he had likely violated section 1326, thus while he was in Oregon."

■ Although conceding that Hernandez was "found" in Oregon, the government argues that a defendant can be "found" in more than one judicial district, even if the defendant is present in a district because the government moved him there. In support, the government cites *Guzman–Bruno*, 27 F.3d at 422.[3] To understand *Guzman–Bruno*, it is necessary to lay out what occurred. Guzman–Bruno argued that his crime of being "found in" was committed not when he was discovered by INS agents in 1992 but when he reentered the United States in 1990 and reported to his state parole officer under an alias. *Id.* Because a more lenient version of the Sentencing Guidelines was in effect in 1990, Guzman–Bruno claimed that "use of the Guidelines in effect at the time of sentencing violates the ex post facto clause." *Id.* Against this backdrop we stated that "[a] violation of 8 U.S.C. § 1326 for being found in the United States after a prior deportation is a continuing offense which continues so long as the alien remains in the country." *Id.* at 422–23. The government relies on this sentence. The very next sentence, however, goes on to say "Guzman Bruno continued to violate the statute until 1992 when the INS arrested him." *Id.* at 423. Read together, these two sentences mean that it is a crime for a deported alien to remain in the United States until he is "found" by the authorities. The INS's act of discovering or finding the defendant completes the offense. In the case of Guzman–Bruno, his discovery and arrest were contemporaneous.

---

**3.** While the government argues that the sentencing cases are inapposite, at the same time it points us to *Guzman–Bruno*, a Sentencing Guidelines case.

The government's argument that venue lies in Washington because section 1326 is a continuing offense begs the question of whether the crime had been completed when Hernandez entered the State of Washington. To say that section 1326 is a continuing offense does not mean that venue is proper wherever the government moves an alien allegedly in violation of section 1326, because even continuing offenses are completed at some point. Although the violation continues up to that point-"at any time" that the alien is discovered and identified-the continuing nature does not mean that the deported alien can be successfully "found" at some later time.

██ The offense of being found in the United States ends when an alien is discovered and identified by the immigration authorities. We conclude that the crime is completed at that point not only for statute of limitations and Sentencing Guidelines purposes, but also for venue. To hold otherwise would produce unfair and absurd results. For example, venue would become the "government's choice" rather than a constitutional guarantee. Under the government's scenario, a defendant could be "found" again and again. Or a deported alien who was moved around the country to various penal institutions could be prosecuted, at the government's option, in any of the districts where the alien set foot.

The government's position regarding the meaning of "found in" the United States is unsupported by a single published decision. Although the government contends that the district court's decision in *United States v. Mancebo–Santiago*, 886 F.Supp. 372, 374 (S.D.N.Y.1995), *aff'd*, 112 F.3d 506 (2d Cir.1996) (unpublished decision), supports its argument, the defendant in that case did not argue that he was "found in" any district other than the Southern District of New York. Instead he claimed that there was insufficient evidence to establish venue. 886 F.Supp. at 373. *Mancebo–Santiago* held that the government introduced sufficient evidence that the defen-

dant violated § 1326 within the Southern District of New York because of evidence that the defendant was present in that district when he was taken into federal custody. *Id.* at 375–76. *United States v. Cores*, 356 U.S. 405, 409, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958), cited by the government, also upheld a prosecution in the venue in which the defendant was discovered.

These cases do not address the government's contention that a defendant may be found, over and over again, until the INS physically arrests or deports the defendant. If Congress wanted to criminalize the conduct of remaining in the United States, it could have used the same wording as in 8 U.S.C. § 1282(c), which punishes any "alien crewman who willfully remains in the United States in excess of the number of days allowed." *See Cores*, 356 U.S. at 409, 78 S.Ct. 875 ("Given the element of willfulness, we believe an alien 'remains,' in the contemplation of the statute, until he physically leaves the United States. The crime achieves no finality until such time."). The government has provided no evidence from the legislative history of section 1326 that Congress meant "willfully remains" when it said "found." We cannot rewrite the statute to substitute "willfully remains" for being "found in" the United States.

### III. Application of Immigration Venue Statute–8 U.S.C. § 1329

██ We turn finally to the government's alternative argument, accepted by the district court, that 8 U.S.C. § 1329, the immigration venue statute, provides for venue in the Western District of Washington because Hernandez was "apprehended" in Washington. But, being "apprehended" is not the crime with which Hernandez was charged and the place of apprehension is not necessarily the district where the crime was committed. Under the Constitution, the accused has a right to a trial in the "State and district wherein the crime shall have been committed." U.S. Const. amend. VI. We heed the Su-

preme Court's admonition that "venue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of a tribunal favorable to it." *Travis v. United States,* 364 U.S. 631, 634, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961) (internal quotation marks and citation omitted).

In this case, Hernandez has represented that policy differences between the United States Attorney's Offices for the District of Oregon and the Western District of Washington regarding prosecutions under 8 U.S.C. § 1326 render the Western District of Washington a more favorable tribunal for the government than the District of Oregon. We note this argument because curiosity leads one to ask, "Why does venue matter?" Nonetheless, this representation has no bearing upon our legal analysis. Regardless of whether any difference in charging practices actually exists,[4] we decline to read section 1329 to provide for venue in a district other than where the crime of being "found in" the United States was committed. *See* 2 Charles Alan Wright, Federal Practice and Procedure § 302, at 201 (2d ed. 1982) ("Congress lacks power to provide for trial in a district other than that in which the offense was committed...."); 8 Charles Gordon et al., Immigration Law & Procedure § 111.09[2], at 111–161 (1998) (section 1329 "must be construed, of course, in harmony with the Sixth Amendment, which requires trial in 'the State and district wherein the crime shall have been committed'").

Although the intersection between section 1329 and the Constitution has not been addressed in a published federal case, the Office of Legal Counsel for the United States Department of Justice has recognized a constitutional flaw in section 1329 as applied to the crime of eluding inspection, a violation of 8 U.S.C. § 1325: "[Section] 1329 is unconstitutional since it au-

thorizes prosecution in a district other than the district at or near the border where the inspection should have taken place." 2 Op. Off. Legal Counsel 110, 110 (1978). The Office of Legal Counsel opinion, however, goes on to suggest that section 1329 "makes good sense" with respect to section 1326, *id.* at 111, but the opinion's reasoning does not support the government's argument in this case. The opinion noted that under section 1326, "if an alien who had previously been deported was found in a particular locality he could properly be prosecuted in that locality because in that context his presence there constituted a continuing offense that had begun when he reentered." *Id.* at 111–12. The Office of Legal Counsel opinion does not analyze the constitutional issue presented by a case like this, in which the defendant was prosecuted in a district other than where he was first "found" and the crime was committed. Nothing in the Constitution, the Office of Legal Counsel opinion or the venue statutes supports the government's position that a defendant may be identified in one district as subject to prosecution under section 1326, transported under government auspices to another judicial district in the United States, and prosecuted there. Hernandez was "found" in Oregon, the crime was committed and completed there, and therefore, prosecution should have been in Oregon.

■ We hold that venue was improper in the Western District of Washington. We reverse the district court's denial of the motion to transfer and remand with instructions to transfer the case to the District of Oregon.[5]

REVERSED AND REMANDED.

---

4. This court did recently address the issue of disparities in plea bargaining practices among the United States Attorney's Offices in connection with 8 U.S.C. § 1326. *United*

*States v. Martinez–Ramos,* 184 F.3d 1055 (9th Cir.1999).

5. We reject the contention by Hernandez that a judgment of acquittal is the appropriate

remedy in the case of improper venue.  *Cf. United States v. Kaytso,* 868 F.2d 1020, 1021 (9th Cir.1989) (holding that dismissal of indictment for lack of venue was not an acquittal and therefore, retrial was not barred by the Double Jeopardy Clause; "the failure to establish venue does not go to guilt or inno- cence" (citing *United States v. Powell,* 498 F.2d 890, 891 (9th Cir.1974) ("venue ... is not an essential fact constituting the offense charged"))); *see also* Fed.R.Crim.P. 21(b) ("in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant ... to another district.").