UNITED STATES of America

v.

Victor HERNANDEZ–HERNANDEZ

No. DR–03–CR–557 AML.

United States District Court, W.D. Texas, Del Rio Division.

Nov. 6, 2003.

Robert Arrambide, Assist. U.S. Atty., for U.S.

Dan Newsome, Fed. Public Defender's Office, for Victor Hernandez–Hernandez.

## ORDER

LUDLUM, District Judge.

Pending before the Court in the above styled and numbered cause is the Defendant's Motion to Dismiss For Lack of Proper Venue. Based on the forthcoming reasons, Defendant's motion is **GRANTED**. The Defendant, pursuant to Rule 12(g) of the Federal Rules of Criminal Procedure [1] and 18 U.S.C. § 3142(d)(1)(B)

---

1. Rule 12(g) states in pertinent part that "[i]f the court grants a motion to dismiss based on a defect in instituting the prosecution, in the indictment, or in the information, it may order the defendant to be released or detained under 18 U.S.C. § 3142 for a specified time

& (d)(2) [2], is **ORDERED** to be temporarily detained for a period of ten (10) business days. The attorney for the Government in the Western District of Texas is **ORDERED** to notify the United States District Court for the Southern District of Texas, the attorney for the Government in the Southern District of Texas, and all other appropriate officials of the Bureau of Immigration and Customs Enforcement as to the Defendant's status in the United States.

## I. BACKGROUND

Victor Hernandez–Hernandez ("Defendant") was arrested in Harris County, Texas, which is located in the Southern District of Texas, on February 19, 2003. On February, 20, 2003, the Bureau of Immigration and Customs Enforcement

("BICE") [3] placed a hold [4] on the Defendant with the Harris County Sheriff. On March 13, 2003, the Defendant was released by the Harris County Sheriff into the custody of the Maverick County Sheriff, whose county is located in the Western District of Texas. According to the Government, the Defendant had been moved to Maverick County to face state-related charges.[5] The Maverick County Sheriff released the Defendant into the custody of Border Patrol, in return for a promise by Border Patrol to seek federal immigration prosecution of the Defendant.

On August 6, 2003, an indictment was filed officially charging the defendant with a violation of 8 U.S.C. § 1326(a) & (b)(1) and alleging that the proper venue for trial was in the Western District of Texas. In

---

until a new indictment or information is filed." FED.R. CRIM. P. 12(g).

2. 18 U.S.C. § 3142, which deals with the release or detention of a defendant pending trial, states in pertinent part that:
>   (d) Temporary detention to permit revocation of conditional release, deportation, or exclusion. If the judicial officer determines that—
>   (1) such person—
>   (B) is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); and
>   (2) the person may flee or pose a danger to any other person or the community;
>   such judicial officer shall order the detention of the person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take the person into custody during that period, the person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings. If tem-

porary detention is sought under paragraph (1)(B) of this subsection, the person has the burden of proving to the court such person's United States citizenship or lawful admission for permanent residence. 18 U.S.C. § 3142(d)(1)(B) & (d)(2).

3. With the establishment of the Department of Homeland Security (DHS), the Immigration and Naturalization Service and Customs were consolidated to form the Bureau of Immigration and Customs Enforcement ("BICE").

4. "Filing a detainer is an informal procedure in which the INS informs prison officials that a person is subject to deportation and requests that officials give the INS notice of the person's death, impending release, or transfer to another institution." *Zolicoffer v. United States DOJ*, 315 F.3d 538, 540 (5th Cir.2003) (quoting *Giddings v. Chandler*, 979 F.2d 1104, 1105 n. 3 (5th Cir.1992)).

5. The Government never clarified to the Court, either in the indictment or in its reply to the Defendant's motion, whether the state charges the Defendant faced in Maverick County had any nexus to the Defendant violating § 1326 by either entering or attempting to enter the United States, after having been previously deported, through the Western District of Texas.

its answer to the Defendant's motion, the Government argued that the Defendant did not come into federal custody until he was released to the Border Patrol, and that the Defendant was not apprehended for purposes of 8 U.S.C. § 1329 until he was in the Western District of Texas. This Court then ordered both sides to submit supplemental answers regarding where the Defendant illegally reentered the United States so as to determine whether the Western District of Texas could still be a proper venue for trial. Both the Defendant and the Government jointly answered that based on the notes taken by the BICE agent who interviewed the Defendant on February 19, 2003, while the Defendant was in the Harris County Jail, the Defendant entered the United States illegally in October, 2002 through McAllen, Texas, which is in the Southern District of Texas.[6]

## II. DISCUSSION

### A. 8 U.S.C. § 1326

■ 8 U.S.C. § 1326 makes three specific acts committed by a previously deported alien a crime: (1) entering; (2) attempting to enter; or (3) being "found" in the United States without the permission of the Attorney General of the United States. *See United States v. Santana–Castellano,* 74 F.3d 593, 597 (5th Cir.1996) (citing *United States v. Gonzales,* 988 F.2d 16, 18 (5th Cir.1993)). An offender completes the crimes of entering or attempting to enter the United States at the time of entry or attempted entry. *See United States v. Barnett,* 1993 WL 185640, *1, 1993 U.S.App. LEXIS 13032, at *3 (4th Cir. June 1, 1993) (per curiam) (finding that "the crime of entering or attempting to enter the country is completed at the time of the entry or attempt . . . ."). It is

the "found in" element of a § 1326 violation that makes it a continuous crime which does not come to a completion until the offender is "found" by immigration officials. *See Santana–Castellano,* 74 F.3d at 598 ("Where a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is 'found' is a continuing offense because it is 'an unlawful act set on foot by a single impulse and operated by an unintermittent force,' to use the Supreme Court's language.") (quoting *United States v. Midstate Horticultural Co.,* 306 U.S. 161, 166, 59 S.Ct. 412, 83 L.Ed. 563 (1939)); *see also United States v. Corro–Balbuena,* 187 F.3d 483, 485 (5th Cir.1999) (explaining that a § 1326 violation "begins at the time the defendant illegally reenters the country and does not become complete unless or until the defendant is found by the INS in the United States."). A defendant is "found" within the meaning of § 1326 "when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to the immigration authorities." *Santana–Castellano,* 74 F.3d at 598 (citing *United States v. Gomez,* 38 F.3d 1031, 1037 (8th Cir.1994)); *see also United States v. Reyes–Nava,* 169 F.3d 278, 280 (5th Cir.1999) ("[A] previously deported alien is 'found in' the United States when his physical presence is discovered and noted by immigration authorities.").

### B. § 1326 and "found in" for Venue Purposes

■ A criminal defendant's right to be tried in the district in which the crime was

---

6. The facts in this case do not warrant analysis of the entry or attempted entry elements of § 1326 due to the joint stipulation by the Government and the Defendant that the Defendant entered the United States illegally through the Southern District of Texas.

committed is protected by the Sixth Amendment[7], Article III of the United States Constitution[8], and Rule 18 of the Federal Rules of Criminal Procedure[9]. *See United States v. Cores,* 356 U.S. 405, 407, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958) ("The Constitution makes it clear that determination of proper venue in a criminal case requires determination of where the crime was committed."); *see also United States v. White,* 611 F.2d 531, 534 (5th Cir.1980) ("The right of a criminal defendant to be tried in the district in which the crime was committed is guaranteed by the sixth amendment to and Article III of the United States Constitution, and Rule 18 of the Federal Rules of Criminal Procedure."). The specific venue statute for § 1326 is 8 U.S.C. § 1329[10], and the venue statute for continuous crimes is 18 U.S.C. § 3237[11]. In instances such as this, involving venue statutes such as § 1329 and § 3237, the Supreme Court has explained that:

> [u]nlike some statutory offenses, there is an absence here of any specific provision fixing venue, save the general language of the Act [8 U.S.C. § 1329] providing for venue "at any place in the United States at which the violation may occur. . . ." In such cases the Court must base its determination on "the nature of the crime alleged and the location of the

act or acts constituting it," *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946), and if the Congress is found to have created a continuing offense, "the locality of [the] crime shall extend over the whole area through which force propelled by an offender operates." *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944). *Cores,* 356 U.S. at 408, 78 S.Ct. 875.

This Court now looks to see where the proper venue for trial would be knowing that "the locality of [the] crime shall extend over the whole area through which force propelled by an offender operates," and to "base its determination on 'the nature of the crime alleged and the location of the act or acts constituting it.'" *Id.* (quoting *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946); *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944)).

In looking for guidance in determining the proper venue for trial for a defendant charged with a § 1326 continuous crime in a district other than the district they were "found in", the Court has discovered that this is a novel issue which has been addressed in a dissenting opinion but has yet to be resolved by the Fifth Circuit. *See United States v. Delgado–Nunez,* 295 F.3d 494, 503 (5th Cir.2002) (Dennis, J., dissent-

---

**7.** "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI.

**8.** "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed . . . ." U.S. Const. art. III, § 2, cl. 3.

**9.** "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed . . . ." Fed. R. Crim. P. 18.

**10.** "Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 275 or 276 [8 USCS § 1325 or 1326] may be apprehended." 8 U.S.C. § 1329.

**11.** "[A]ny offense against the United States begun in one district and completed in another, or committed in more that one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237.

ing) ("Although this circuit has not addressed when a defendant is 'found in' the United States for purposes of venue, it has previously concluded that the 'found in' crime continues until the INS discovers the defendant, albeit for purposes of the Sentencing Guidelines."); *see also United States v. Herrera–Ochoa*, 245 F.3d 495, 499 (5th Cir.2001) (explaining that the decision in *Santana–Castellano* was "[a]ddressing a sentencing appeal only."); *but cf. United States v. Hernandez*, 189 F.3d 785, 791 (9th Cir.1999) (holding that "[t]he offense of being found in the United States ends when an alien is discovered and identified by immigration authorities. We conclude that the crime is completed at that point not only for statute of limitations and Sentencing Guidelines purposes, but also for venue."). In *Delgado–Nunez*, 295 F.3d at 496, the defendant illegally reentered the United States, was arrested by state authorities on an unrelated offense and was "found" by an INS agent in the Northern District of Texas. *See id.* The defendant was eventually transferred to state authorities in San Antonio in the Western District of Texas. *See id.* The defendant was then convicted under § 1326 in the United States District Court for the Western District of Texas. *See id.* The defendant argued that the district court violated his Sixth Amendment venue rights when it held that he had waived any objection to venue by failing to raise it before or during the trial. The Fifth Circuit found that the defendant had enough notice of a defect of venue to raise it before trial and held that the defendant had waived any claim with regards to improper venue. Having determined that the defendant had waived any claim of improper venue on appeal, the Fifth Circuit's majority opinion did not proceed to analyze whether the Western District of Texas was indeed the proper venue for trial. Judge Dennis, however, did not find any waiver of improper venue by the defendant and in his dissenting opinion proceeded to determine whether the Western District of Texas was indeed the proper venue for trial. *See id.* at 498, 503 (Dennis, J., dissenting). Judge Dennis then adopted the holding of the Ninth Circuit and stated:

I find the rationale of the Ninth Circuit to be both wholly persuasive and constitutionally mandated.... Because the government has introduced no evidence to show that Delgado–Nunez was in the Western District of Texas at some time prior to being 'found in' the Northern District of Texas in September 1997, I conclude that venue was improper in the Western District of Texas, .... *Id.* at 505.

In *Hernandez*, 189 F.3d at 789, the defendant was "found" in Oregon by immigration officials after he was arrested on traffic violations. *See id.* The defendant was then transferred to and prosecuted in Washington state for an outstanding arrest warrant there. *See id.* After completing his state sentence, the defendant was then indicted in the Western District of Washington. *See id.* The Ninth Circuit found the Western District of Washington to be an improper venue for trial and held that the defendant was "found" in the District of Oregon, making Oregon the proper venue for trial. *See id.* at 792.

### C. Venue for § 1326 under § 1329

The Fifth Circuit has addressed a § 1326 venue issue involving § 1329. *See United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir.1997) (citing § 1329 and stating that "[w]hen the United States brings such an action, the United States attorney has the duty to prosecute the suit in any place in the United States where the violation occurred or where the person charged with the violation may be apprehended."). In *Asibor*, the defendant, who was charged, inter alia, with a § 1326 violation

had initially been arrested in Texas on drug charges but was not "found" by INS officials until he had been convicted and was incarcerated in Mississippi. The defendant argued that the proper venue for trial was in Texas where he believed the crime had been committed, not Mississippi where he was incarcerated on drug charges. *See id.* at 1037. The Fifth Circuit applying § 1329 found and held that:

> Though initially arrested in Houston by law enforcement officials, at the time Asibor was located by the INS and charged with the crime of illegal re-entry, he had been convicted and was incarcerated in the state of Mississippi. Therefore, we conclude that Asibor was "found" and apprehended by INS officials on December 8, 1994 while incarcerated in Mississippi. Venue was proper in Mississippi .... *Id.*

### D. Application of the Law to the Instant Case

■ By putting a "hold" or detainer on the Defendant while he was in a Harris County Jail, BICE "found" the Defendant in the United States, as defined by § 1326(a)(2), in the Southern District of Texas. This discovery completed the continuous crime of being a previously deported alien who entered, attempted to enter or was found in the United States without the permission of the Attorney General of the United States. At that point, venue for trial was proper within the Southern District of Texas where the Defendant was "found" by BICE. The Government, in their answer to the Defendant's motion, contends that the Defendant was "apprehended" in the Western District of Texas when he was released into their custody, thus also making the Western District of Texas a proper venue for trial under § 1329.[12] This Court declines to accept the Government's rationale. In accordance with *Asibor,* 109 F.3d at 1037, where the defendant was "found" and apprehended by immigration officials while incarcerated in prison, this Court reads the "found in" element of § 1326, in conjunction with § 1329 for the specific purposes of the "found in" element of § 1326, to mean that a defendant is "apprehended" when he is "found" by immigration officials. A defendant charged under § 1326 with being "found in" the United States, cannot later be "apprehended" in another district after he has completed the crime of being "found in" the United States by immigration authorities. Therefore, if a defendant has been "found" by immigration authorities in one district, he cannot then be transferred to another district only to be "apprehended" by federal authorities in the other district and charged with a § 1326 violation while using § 1329 for venue purposes. The Government would like the Court to make the distinction that the Defendant was in state custody when he was found and therefore could not be "apprehended" by federal authorities. That distinction is not acceptable, as Federalism may go only so far. The defendant was no longer committing the continuous crime when he was "found" by immigration authorities as he was no longer free to move around the country in continuous violation of § 1326— he was for all intents and purposes "apprehended".

### III. CONCLUSION

In conclusion, the Defendant neither began, committed, nor completed the § 1326

12. Under the Government's argument, a defendant who is no longer committing a § 1326 continuing crime and is incarcerated in Maine, can then be transferred by law enforcement authorities to Texas, be "apprehended" and then tried in Texas or wherever the Government or local authorities would choose to continue to transfer him.

violation within the Western District of Texas. He commenced, continued, and completed his crime, by both entering into and being "found" and "apprehended" in the United States in the Southern District of Texas. The Southern District of Texas is the proper venue for trial in this § 1326 cause. Based on the foregoing reasons, the Defendant's Motion to Dismiss For Lack of Proper Venue is **GRANTED**. However, based on the evidence of the Defendant's status as an illegal alien, the Defendant, pursuant to Federal Criminal Procedure Rule 12(g) and 18 U.S.C. § 3142(d)(1)(B) & (d)(2), is hereby **ORDERED** to be temporarily detained for a period of ten (10) business days. The attorney for the Government in the Western District of Texas is **ORDERED** to notify the United States District Court for the Southern District of Texas, the attorney for the Government in the Southern District of Texas, and all other appropriate officials of the Bureau of Immigration and Customs Enforcement as to the Defendant's status in the United States.