**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GUSTAVO REYES-CEJA,
*Defendant-Appellant*.

No. 11-50167

D.C. No.
2:10-cr-00042-
ODW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Argued and Submitted
April 10, 2012—Pasadena, California

Filed April 1, 2013

Before: Andrew J. Kleinfeld, Richard A. Paez,[*]
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Kleinfeld

---

[*] The original panel, consisting of Judge B. Fletcher, Judge Kleinfeld, and Judge M. Smith, heard oral argument on April 10, 2012. Judge B. Fletcher died on October 22, 2012, while the decision was pending, and Judge Paez was drawn to replace her. Judge Paez has read the briefs, reviewed the record, and listened to the tape of oral argument.

## SUMMARY[**]

### Criminal Law

Affirming a sentence, the panel joined the Fifth, Tenth, and Eleventh Circuits and held that the Sentencing Guidelines enhancement for being under a criminal justice sentence, U.S.S.G. § 4A1.1(d),  may be applied to a deportee "found in" the United States in violation of 8 U.S.C. § 1326 while he was imprisoned.

### COUNSEL

Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, for Appellant.

David L. Kirman, Assistant United States Attorney, Los Angeles, California, for Appellee.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**OPINION**

KLEINFELD, Senior Circuit Judge:

We address whether the Sentencing Guidelines enhancement for being under a criminal justice sentence[1] may be applied to a deportee "found in" the United States in violation of 8 U.S.C. § 1326[2] while he was imprisoned.

## I. Facts.

Gustavo Reyes-Ceja, an alien, has repeatedly entered the United States, committed crimes, been deported, and surreptitiously entered again. He was convicted of voluntary manslaughter and assault with a firearm, deported after

---

[1] U.S.S.G. § 4A1.1(d) ("Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.").

[2] 8 U.S.C. § 1326 ("[A]ny alien who — (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, *or is at any time found in*, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under title 18, or imprisoned not more than 2 years, or both.") (emphasis added).

serving time, returned surreptitiously, convicted of committing a lewd act upon a child, deported after serving time, returned surreptitiously, convicted of petty theft, deported, returned surreptitiously; was deported again, returned again, and was convicted of grand theft. He began serving a 32-month sentence for the grand theft conviction in 2007. He was still serving that sentence about two years later when the Bureau of Immigration and Customs Enforcement (ICE) became aware that he was once again in the United States.

Reyes-Ceja pleaded guilty in federal court, pursuant to a plea agreement, to an information charging that he was "found in" the United States on or about November 25, 2009, after he had been previously deported.[3] In his plea agreement

---

[3] The information in full states:

> On or about November 25, 2009, defendant Gustavo Reyes-Ceja, an alien, who had been officially deported and removed from the United States on or about May 11, 1989, September 26, 1992, September 26, 2000 and again on May 3, 2002, was found in Riverside County, within the Central District of California, after knowingly and voluntarily re-entering and remaining in the United States without having obtained permission from the Attorney General or his designated successor, the Secretary of Homeland Security, to reapply for admission to the United States following deportation and removal.

> At least one of the defendant's previously alleged deportation and removals from the United States occurred subsequent to defendant's convictions for one or more of the following aggravated felonies: 1) Voluntary Manslaughter, in violation of California Penal Code Section 192.1 and Assault with Firearm, in

he stipulated to being a citizen of Mexico, not the United States, and to having "knowingly and voluntarily re-entered and thereafter remained in the United States" on or about March 15, 2004, subsequent to his most recent removal, without the consent of the Attorney General or the Secretary of Homeland Security. He also stipulated that "immigration authorities found" him in Riverside County, California on or about November 25, 2009. It is undisputed that at that time, he was in a state correctional facility in Riverside County and had been for about two years, and that ICE "found" him in the United States more than five years after he illegally re-entered.

At sentencing, Reyes-Ceja's criminal history computation was increased by two points because he committed the "found in" offense "while under" his California grand theft sentence.[4] Reyes-Ceja preserved his objection to this enhancement, and has consistently argued that a "found in" sentence ought not to be enhanced if presence in the United States is involuntary, and that, for sentencing purposes, his "found in" crime should be treated as completed when he was "found" by California authorities in 2007. Reyes-Ceja was

---

violation of California Penal Code Section 245(a)(2), on or about March 30, 1984, in the Superior Court of California, for the County of Los Angeles, Case Number A906876; and 2) Lewd Act Upon a Child, in violation of California Penal Code Section 288(a), on or about March 6, 1991, in the Superior Court of California, for the County of Los Angeles, Case Number YA004472, all of which are crimes of violence for which the terms of imprisonment imposed were at least one year.

[4] U.S.S.G. § 4A1.1(d).

sentenced to 37 months imprisonment on his "found in" conviction, the bottom end of the Sentencing Guidelines range for his offense.[5]  Without the two-point enhancement to his criminal history score, the applicable Guidelines range would have been 30–37 months instead of 37–46 months.[6]

## II.  Analysis.

This is a sentence appeal.[7]  The only issue is whether ICE finding someone in penal custody suffices for a "while under any criminal justice sentence"[8] enhancement to criminal

---

[5] Reyes-Ceja has been sentenced twice.  The district court first sentenced him to 37 months, three years of supervised release, and a $100 special assessment.  He appealed, and the government conceded error, because the district court had not verified that he had read his presentence report and discussed it with his attorney.  On remand he got the same sentence.

[6] U.S.S.G. Ch. 5, pt. A (Sentencing Table) (2010).

[7] We have jurisdiction under 18 U.S.C. § 3742(a).

[8] U.S.S.G. Ch. 4, pt. A (Criminal History):

> The Comprehensive Crime Control Act sets forth four purposes of sentencing. (*See* 18 U.S.C. § 3553(a)(2).) A defendant's record of past criminal conduct is directly relevant to those purposes. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an

history, when the individual had been confined by state authorities some time earlier and was not free to depart the United States on or about the date specified in the federal "found in" charge.[9] The issue is purely one of law –

---

indicator of a limited likelihood of successful rehabilitation.

The specific factors included in § 4A1.1 . . . are consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior. While empirical research has shown that other factors are correlated highly with the likelihood of recidivism, *e.g.*, age and drug abuse, for policy reasons they were not included here at this time. The Commission has made no definitive judgment as to the reliability of the existing data. However, the Commission will review additional data insofar as they become available in the future.

§ 4A1.1. <u>Criminal History Category</u>

The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

. . .

(d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

[9] 8 U.S.C. § 1326 ("[A]ny alien who (1) has been denied admission, excluded, deported, or removed . . . and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be fined under title 18, or imprisoned not more than 2 years, or both.").

interpretation of the applicable Sentencing Guidelines subsection – so we review de novo.[10]

Reyes-Ceja argues that for sentencing purposes his "found in" offense should be treated as having ended when he was discovered by California authorities. He says that if we treat his "found in" offense as continuing until he was discovered by ICE, then the two-point enhancement results not from what he did, sneaking back into the United States in 2004, but from what ICE did, learn of his presence in 2009. He committed no relevant voluntary act at the time ICE found him. When he was in custody in Riverside County, he no doubt would have preferred to be free in Mexico, so his presence in the Riverside correctional facility was involuntary.

Reyes-Ceja argues that the purpose of the "while under" enhancement is to measure culpability and deter recidivism, and that there is nothing to deter if at the time of the charged offense the person cannot by any conduct of his own avoid commission of the crime. In November 2009, the date he was "found in" the United States, there was no way for him to avoid committing the crime, since he was imprisoned and unable to leave the United States. He also argues that the enhancement cannot properly deter or measure culpability because whether or not it applies is a matter of chance; had ICE found him after he committed the grand theft but before he was convicted and sentenced for it, he would not have suffered the enhancement.

---

[10] *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006).

We have not decided whether a "while under" enhancement may be applied to a "found in" offense on a date when the offender is imprisoned and cannot leave the United States, though we have decided related questions. "We repeatedly have held that the crime of being found in the United States after deportation is a continuing offense which continues *so long as the alien remains in the country*. That is, the offense commences with the illegal entry, but is not completed until discovery."[11]   However, we have never so held in a sentencing enhancement case where the offender was confined at the relevant time. We do so now, concluding that the general principle is properly applied to a confined offender.

Though we have not yet addressed whether the "while under" enhancement applies when ICE "found" the alien when he was in prison and unable to depart, the  Fifth,[12] Tenth,[13] and Eleventh Circuits[14] have.[15]   The Fifth Circuit holds that "a 'found-in' violation is a continuing violation until the date the alien is discovered by immigration authorities," and so a defendant "committed all or part of that

---

[11] *United States v. Garcia-Jimenez*, 623 F.3d 936, 940 (9th Cir. 2010) (quoting *United States v. Reyes-Pacheco*, 248 F.3d 942, 946 (9th Cir. 2001)) (emphasis in the original).

[12] *United States v. Santana-Castellano*, 74 F.3d 593 (5th Cir. 1996).

[13] *United States v. Hernandez-Noriega*, 544 F.3d 1141 (10th Cir. 2008).

[14] *United States v. Coeur*, 196 F.3d 1344 (11th Cir. 1999).

[15] The First Circuit, on plain error review, has also held that a "while under" enhancement applies to a defendant serving a state prison sentence when found by immigration authorities. *United States v. Figuereo*, 404 F.3d 537 (1st Cir. 2005).

violation on the date he was discovered [by immigration authorities] while imprisoned on the state offense."[16] The Eleventh Circuit has adopted the Fifth Circuit's reasoning.[17] The Tenth Circuit holds that "[a]lthough the act of returning to the United States must be voluntary, it is not relevant whether an alien's continued presence in the United States was voluntary at the moment of discovery."[18]  None of our cases compel a contrary result, thus we join our sister circuits.

Reyes-Ceja argues that *United States v. Jimenez-Borja*[19] stands for the proposition that an alien is "found in" the United States when he is found by local authorities.  That case is distinguishable.  Jimenez-Borja's indictment charged him with being "found in" the United States on the date he was discovered by local police.  We held that an alien can be "found in" the United States when found by local police, but reasoned that "[t]he crime of being 'found in' is a continuing offense. . . .   Thus, Jimenez-Borja could have been charged with having been 'found in' the United States . . . when he was found . . . by local police (as he was), or . . . when he was discovered by the INS, or on any date in between . . . ."[20] Reyes-Ceja also cites *United States v. Hernandez*[21] for the proposition that an alien cannot be successively "found " by

---

[16] *Santana-Castellano*, 74 F.3d at 598.

[17] *Coeur*, 196 F.3d at 1346.

[18] *Hernandez-Noriega*, 544 F.3d at 1143 (quotation omitted).

[19] *United States v. Jimenez-Borja*, 378 F.3d 853 (9th Cir. 2004).

[20] *Id.* at 857–58 (citation omitted).

[21] *United States v. Hernandez*, 189 F.3d 785 (9th Cir. 1999).

different authorities at different times. However, that case merely held that a defendant cannot be successively found by federal immigration authorities, because "[t]he INS's act of discovering or finding the defendant completes the offense."[22]

We reject Reyes-Ceja's argument that his "while under" enhancement is improper because it depends upon the State of California's and ICE's actions, not upon his. Were the statutory language "is at any time found in[] the United States" considered without regard to the words preceding it, a serious question would arise. Taken in isolation, the phrase might seem to criminalize involuntary conduct.

The language preceding "is at any time found in," though, avoids the problem of an involuntary crime or status offense. The statute says "enters, attempts to enter, or is at any time found in, the United States."[23] Even though the deported alien can no longer depart once he is imprisoned, "[a] conviction under § 1326 for being 'found in' the United States necessarily requires that a defendant commit an act: he must re-enter the United States without permission within five years after being deported."[24] And to be convicted of a "found in" offense, a defendant must voluntarily return to the United States or voluntarily remain after an involuntary

---

[22] *Id.* at 790.

[23] 8 U.S.C. § 1326 ("[A]ny alien who (1) has been denied admission, excluded, deported, or removed . . . and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be fined under title 18, or imprisoned not more than 2 years, or both.").

[24] *United States v. Ayala*, 35 F.3d 423, 426 (9th Cir. 1994).

entry.**[25]**  Had Reyes-Ceja accidentally wandered across the border while drunk, or been kidnapped and taken across the border against his will, a different question would need to be answered.**[26]**  But he voluntarily reentered the country after deportation, and one cannot be "found in" without having entered.  The entry, not the being "found in," is the voluntary conduct.

Reyes-Ceja argues that we should follow the reasoning of *United States v. Pacheco-Medina*,**[27]** and hold that "physical presence is not enough" for a "found in" offense, where an alien "lack[ed] the freedom to go at large and mix with the population."**[28]**  We distinguish *Pacheco-Medina* because in that case the alien never succeeded in re-entering when he was caught scaling the border fence.  We held in *Pacheco-Medina* that an entry was required before a deported alien could be "found in,"**[29]** but here Reyes-Ceja succeeded in reentering.  It is not any custody that prevents completion of a "found in" crime under *Pacheco-Medina*, only custody that keeps the alien from successfully re-entering.

---

**[25]** *United States v. Quintana-Torres*, 235 F.3d 1197, 1200 (9th Cir. 2000); *see also United States v. Salazar-Robles*, 207 F.3d 648, 650 (9th Cir. 2000) ("'Being found' is an element of the offense; but it is a passive state, not requiring proof of a voluntary act.  The voluntary element consisted in [the defendant's] return.").

**[26]** *See United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1195 (9th Cir. 2000) (en banc); *see also Quintana-Torres*, 235 F.3d at 1200.

**[27]** *United States v. Pacheco-Medina*, 212 F.3d 1162 (9th Cir. 2000).

**[28]** *Id.* at 1163–64 (quotation omitted).

**[29]** *Id.* at 1165–66.

We also reject Reyes-Ceja's argument that the "while under" enhancement's purpose of deterring recidivism and measuring culpability is not met when an alien is "found in" prison. The purpose of criminalizing "enters, attempts to enter, or is at any time found in" is to deter reentry without permission by a deported alien. The purpose of criminalizing the passive occurrence of being "found in" is to prevent the five year statute of limitations[30] from barring prosecution of a deported alien who surreptitiously reenters and successfully avoids discovery for the limitations period. We reasoned similarly in a venue decision, *United States v. Hernandez*:[31] the immigration authorities' discovery of the deported alien in the United States "completes" the "found in" offense, for venue as well as statute of limitations and guidelines purposes.[32]

Though Reyes-Ceja could not avoid being "found in" the United States while he was incarcerated, he could have avoided committing the "found in" crime by not re-entering. As for the possibility that he might have avoided the enhancement had he been reported to ICE when he was arrested but before he was convicted for his grand theft, his

---

[30] 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

[31] *Hernandez*, 189 F.3d 785.

[32] *Id.* at 790–91 ("The offense of being found in the United States ends when an alien is discovered and identified by the immigration authorities. We conclude that the crime is completed at that point not only for statute of limitations and Sentencing Guidelines purposes, but also for venue."); *see also Jimenez-Borja*, 378 F.3d at 857–58.

criminality would not have been any the less.  He was not supposed to come back, and he was not supposed to commit grand theft.  He voluntarily took the risk of a "while under" enhancement by committing the grand theft after his illegal reentry.

One reason why 8 U.S.C. § 1326 has given rise to so many cases is because it defines a crime in part by what the government does (find an alien who has reentered the United States without permission) instead of solely by what the criminal does.  Criminal statutes ordinarily address the criminal's conduct ("if a person does X, he shall be punished"), not the government's conduct.  In context, though, it is the alien's act of reentering without permission, and not ICE's act of discovering him, that constitutes the criminal conduct.  ICE's discovery of an alien merely completes his crime and starts the statute of limitations running.  Section 1326's phrasing allows the government to prosecute deported aliens who have surreptitiously reentered and evaded detection for more than five years, while at the same time preventing ICE from finding an alien and then waiting for more than five years to prosecute him.  ICE ends the crime, but does not generate it.  The alien generates the crime through his voluntary act of reentry after having been deported.

**AFFIRMED.**